NEW YORK UNIVERSITY, NYU SCHOOL OF MEDICINE, NYU HOSPITALS CENTER, , Plaintiff,

against
TURNER CONSTRUCTION COMPANY, Defendant.


Index No. 653535/2015

Plaintiffs - Pillsbury Winthrop Shaw Pittman LLP (Edward Flanders, 
Matthew Stockwell, Jeffrey Meltzer, Matthew Francis Putorti, Joseph David Jean 
and Leo E. Milonas), 31 West 52nd Street, New York, NY 10019.
 
Defendants - Peckar & Abramson, P.C. (Gregory Hertoff, Richard Vollack and Christopher Matthew Bletsch), 41 Madison Avenue, 20th Floor, New York, NY 10010.


Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 008) 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216 were read on this motion to/for PRECLUDE
Upon the foregoing documents, Turner Construction Company's (Turner) motion (i) pursuant to CPLR § 3126 to preclude the use by plaintiffs of certain deposition testimony, (ii) pursuant to CPLR § 3124 to compel the plaintiffs to produce certain outstanding discovery, and (iii) to extend the discovery schedule in this matter in light of the foregoing is decided in accordance with the below.
THE RELEVANT FACTS AND CIRCUMSTANCES
This is a breach of contract action by New York University, NYU School of Medicine and NYU Hospitals Center's (the plaintiffs, collectively, NYU) arising out of damages to NYU's Langone Medical Center (Langone Campus) that were allegedly sustained during Super Storm Sandy. Turner was a contractor performing construction work for NYU on the Langone Campus, which abuts the FDR Drive on Manhattan's East Side, when Super Storm Sandy inundated New York [*2]City with vast swaths of water. NYU alleges that the majority of the damages it experienced resulted from Turner's failure to protect against certain vulnerabilities at the construction site of a new "Energy Building" on the Langone Campus which permitted water from the storm surge to enter buildings adjacent to the Energy Building causing damages in excess of $1 billion.
Although the litigation has been pending in this matter for approximately five years, the instant motion stems from the timing of the turning over a certain Picture (hereinafter defined). The issue was first raised on January 22, 2020 at an in-court status conference (the Conference) with the parties. At the Conference, Turner claimed that NYU had withheld from disclosure "the singular picture of the most critical issue in this lawsuit — a picture of the protection Turner installed at an air shaft (the 'Air Shaft') opening that NYU contends was inadequate and permitted millions of gallons of Super Storm Sandy storm surge flood water to enter the inter-connected basement systems of the ten buildings that underlie its $1.3 billion in property and business interruption damages (the 'Picture')" (NYSCEF Doc. No. 177, pp. 1-2; NYSCEF Doc. No. 160, ¶¶ 4-5). Turner claimed that NYU's counsel had the Picture in its possession all along but wrongfully withheld it, and improperly questioned Ralph Dillon, one of Turner's corporate representatives, whose testimony Turner alleges would have been different if he had seen the Picture prior to testifying at his deposition. In order to more fully develop the record, the court directed Turner to seek its relief by formal order to show cause.
By its order to show cause, Turner claims that NYU withheld the Picture deliberately, and, in addition, that NYU has withheld a number of other documents, including documents exchanged between NYU and its insurance carrier, FM Global, in a related insurance litigation (the Coverage Litigation) arising out of the same nexus of events as this action. 
Turner seeks to preclude that portion of Mr. Dillon's testimony wherein he testified that NYU instructed Turner to use plywood, plastic, and sandbags to protect the Air Shaft during Super Storm Sandy and that Turner followed those instructions (NYSCEF Doc. No. 167 at 119:17-120:14, 122:9-11). The Picture shows just sandbags placed by Turner and/or its subcontractors inside the Air Shaft on the Energy Building Construction site leading to a room in the basement of the Medical Science Building that housed an emergency generator (NYSCEF Doc. No. 161). 
Turner had also installed protective measures at the Air Shaft for two other storms, (i) a Nor'easter a week or so after Super Storm Sandy and (ii) another major storm in February 2013 (NYSCEF Doc. No. 18, ¶ 18; NYSCEF Doc. Nos. 168-169). And, photographs of the protective measures utilized in those other storms are consistent with Mr. Dillon's testimony about the protective measures that he testified were used for Super Storm Sandy, i.e., they show plywood, plastic, and sandbags in place in the Air Shaft (NYSCEF Doc. Nos. 168-169). Turner contends that Mr. Dillon's unrefreshed recollection resulted in testimony in which he conflated multiple simple and related occurrences, particularly since Mr. Dillon had been shown pictures from the two post-Sandy storms in preparation for his deposition but was unable to see the Picture of Super Storm Sandy preparations because it was allegedly wrongfully withheld by NYU. 
NYU, in turn, contends that withholding the Picture was unintentional and that as soon as counsel for NYU "determined that the [t]he Picture had not already been produced, we produced [*3]it" (NYSCEF Doc. No. 186, ¶¶ 13-15; NYSCEF Doc. No. 181, ¶¶ 15-17).
DISCUSSION
To invoke the drastic remedy of preclusion pursuant to CPLR § 3126, the court must first determine that a party's failure to comply with a disclosure order was willful, deliberate and contumacious (Holliday v Jones, 36 AD3d 557, 557-58 [1st Dept 2007]).
Here, Edward Flanders, counsel for NYU, attests that at the time of Mr. Dillon's deposition on October 18, 2019, he believed the Picture at issue "was one of the many thousands of photographs that Plaintiffs had already produced" (NYSCEF Doc. No. 181, ¶ 15). Mr. Flanders goes on to state:
16. After Mr. Dillon testified (to my surprise) that he specifically recalled using plywood and plastic to protect the MSB Areaway [the Air Shaft] during Sandy, I requested from my colleagues at Pillsbury copies of any pictures of the protection of the MSB Areaway. It was only at this time that we determined that The Picture had been accidentally omitted from Plaintiffs' prior productions.
17. As soon as we determined that The Picture had not already been produced, we produced it on November 6, 2019.
(NYSCEF Doc. No. 181, ¶¶ 16-17).
But it would seem that Paragraph 16 weakens counsel's position. It is irrelevant that there may have been thousands and thousands of pictures that were disclosed. Once Mr. Dillon testified as to the Air Shaft, counsel for NYU had no trouble zeroing in on the picture that mattered. What this shows is what you would expect: counsel to NYU had the pictures sorted on their litigation system for this matter by relevance and subject matter, and should have known whether they produced it or not. Matthew Stockwell's affirmation further confirms this conclusion:
4. In late 2012 or early 2013, I represented Plaintiffs in this dispute at my previous firm, Lowenstein Sandler LLP ("Lowenstein"). I, along with several members of Lowenstein, began interviewing various employees who either assisted in preparation efforts for Superstorm Sandy, or were present while the storm was taking place. The purpose of these interviews was to assist Plaintiffs' consultant in determining potential areas of water entry and the level of protection at such potential entry points, as well as water pathways in the buildings during Superstorm Sandy, and any other relevant information that the employees could provide.
5. At these interviews, any pictures or video taken by the employee during Superstorm Sandy were collected by an e-discovery vendor. On information and belief, these photographs were placed in a dedicated folder on Plaintiffs' network drive, along with other photographs Plaintiffs had collected separately ("Employee Photographs"). These Employee Photographs were produced to Turner on November 18, 2016. Attached as Exhibit 1 is the email submitting this production.
6. In approximately July 2013, I left Lowenstein to join Pillsbury Winthrop Shaw [*4]Pittman LLP ("Pillsbury"), where I continued working on this matter. By this time, we had mostly completed the interviews of employees on storm preparation/entry points, and commenced interviews of employees who possessed knowledge regarding Plaintiffs' damages. These damages interviews were primarily in support of an insurance coverage litigation between NYU and its property insurer, Factory Mutual.
7. On October 23, 2013, we interviewed Korgun Maral, an employee who worked at the MSB loading dock as a receiver. The purpose of the interview was to determine what inventory was damaged at the MSB loading dock. R.G. Vanderweil Engineers ("Vanderweil"), Plaintiffs' consultant that was assisting with the damage assessment, attended the interview.
8. During Mr. Maral's interview, we also questioned him about observations he made during the storm as he was working at the MSB loading dock, which is located close to the subject air intake shaft.
9. As it turns out, Mr. Maral took a photograph the morning of Superstorm Sandy, showing the Energy Building construction site pooling with water. The far-right corner of the photograph also shows the air intake shaft and the sandbags that Turner placed in the air intake shaft in preparation for Superstorm Sandy. This is "The Picture."
10. On October 29, 2013, I instructed another attorney at my firm to collect photographs from the new witnesses (which, to my recollection were very few, and may have included only [t]he Picture). I believed that these photographs, had been collected, stored, (and later produced) with the other Employee Photographs.
11. In addition, while I have been unable to determine exactly how Vanderweil came into possession of the photograph, it appears that Mr. Maral sent the photograph directly to Vanderweil.
12. On January 17, 2018, a report prepared by Vanderweil was produced in Plaintiffs' litigation against its insurer, New York University v. Factory Mutual Insurance Company, Index No. 15-cv-9505 (SDNY) ("Coverage Litigation"). That report contains a copy of [t]he Picture. See Exhibit 2.
13. Following Mr. Dillon's deposition on October 18, 2019, I, along with my colleagues at Pillsbury, conducted a search for [t]he Picture and determined that it had been inadvertently omitted from Plaintiffs' prior productions.
14. On November 6, 2019, as soon as we determined that The Picture had not already been produced, we produced it.
15. At no time did I represent to Turner that Plaintiffs did not have any pictures of Turner's inadequate protection of the MSB Areaway.
(NYSCEF Doc.186, ¶¶ 4-15 [emphasis added]).
Counsel for NYU further argues that he wasn't misleading Mr. Dillon at Mr. Dillon's deposition when he said that they had not been able to locate any photographs of the scene in question "either" because he was referring to pictures taken by Turner, not NYU:
Q. Okay. So, were any photographs taken of the preparation that you did prior to Superstorm Sandy?
A. So, there must have been, but I could not find anything in my archives or computers. I mean, we switch computers job to job, and, you know, sometimes  I'm not really a computer whiz, so, like I won't  I won't back up and archive things.
But I would have to think there was  there were photographs taken by someone, whether it be my staff or safety. I just  I haven't been able to locate them.
Q. Yeah, we haven't either.
A. Right. Which is unbelievable to me.
(NYSCEF Doc. No. 167 at 140:5-20).
From the record, it is simply not clear that he was referring to pictures taken by Turner and not NYU, but in any event, this really misses the point as it relates to the instant motion. The point is why wasn't the Picture produced in the first place and under what theory was the Picture withheld — i.e., counsel for NYU does not suggest that there was an agreement that NYU did not have to produce multiple pictures as long as it produced a representative set, or something to that effect.
That said, the record does not support the conclusion that NYU's failure to produce the Picture here was willful, deliberate and contumacious (see Crupi v Rashid, 157 AD3d 858, 859 [2d Dept 2018] [clear showing required before court may invoke drastic remedy of precluding evidence].And, precluding the deposition is particularly inappropriate in this instance because Mr. Dillon, who is Turner's corporate representative, testified to having a specific recollection of the preparations in question:
Q. So this is  and forgive me if I am kind of like putting a lot of emphasis on his, but it is very important for the case to understand what you have an actual recollection of versus you're trying to reconstruct what happened, you know, now seven years ago.
A. Right, understood.
Q. Right?
A. Understood.
Q. So, do you have a specific recollection of telling your foreman, Julio Collazo, to use [*5]plywood and then put plastic over the plywood and then stack sandbags?
A. Yes.
Q. Okay. No doubt in your mind that what you told him?
A. That's what I told him to do.
(NYSCEF Doc. No. 167 at 129:24-130:17 [emphasis added]).
In other words, although Turner was deprived of its ability to properly prepare Mr. Dillon for his deposition, they are simply not entitled to a 'do over.' However, in light of the delay in disclosure, should Turner desire to continue Mr. Dillon's deposition as to the Picture (including, without limitation, addressing whether in reviewing the Picture it changes his recollection as to what preparation Turner actually did and why his recollection may have been previously been different), this is permissible and appropriate.
Inasmuch as Turner also seeks an extension of time to review certain documents recently produced by NYU, and certain additional documents and other discovery, a discovery conference is ordered such that such additional discovery can be properly scheduled and the parties are directed to email Part 53 with their availability the week of May 4, 2020 for a telephonic conference.
Accordingly, it is
ORDERED that the defendant's motion to preclude pursuant to CPLR 3126 is denied; and it is further
ORDERED that the parties may continue the deposition of Mr. Dillon and any other witness whose testimony may be necessary based on the foregoing; and it is further
ORDERED that the remainder of the defendant's motion is granted to the extent that a discovery conference is ordered.
Date: April 3, 2020